**BEXAR METROPOLITAN WATER DISTRICT, Appellant,**

v.

**EDUCATION AND ECONOMIC DEVELOPMENT JOINT VENTURE, Corporation for Education and Economic Development, and Regional Economic Development Corporation, Appellees.**

No. 04–06–00279–CV.

Court of Appeals of Texas, San Antonio.

Dec. 20, 2006.

Rehearing Overruled Feb. 1, 2007.

Luis A. Moreno, Oscar H. Villarreal, Villarreal & Moreno, L.L.P., San Antonio, for appellant.

Beth Watkins Squires, Law Office of Beth Squires, Jason Speights, Speights Law Firm, L.L.P., San Antonio, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, SARAH B. DUNCAN and SANDEE BRYAN MARION, Justices.

**OPINION**

Opinion by SARAH B. DUNCAN, Justice.

We are asked to decide whether governmental immunity applies to and bars this suit against Bexar Metropolitan Water District for specific performance of a contract to sell real estate. We hold that it does and therefore reverse the trial court's order denying Bexar Met's plea to the jurisdiction and render judgment dismissing the cause for want of jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are neither disputed nor complicated. Bexar Met entered into a contract to sell a parcel of land to the Corporation for Education and Economic Development (CEED), acting on behalf of the Education and Economic Development Joint Venture, a Texas not-for-profit joint venture composed of the CEED and the Regional Economic Development Corporation (collectively, "the Joint Venture"). When Bexar Met refused to close, the Joint Venture sued Bexar Met for specific performance of the contract. The trial court denied Bexar Met's plea to the jurisdiction. Bexar Met then filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006).

APPLICABLE LAW AND STANDARD OF REVIEW

Although a governmental entity waives its immunity from liability when it enters into a contract, it does not waive immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (2006). In the context of contract claims, since one of the "fundamental reason[s] why immunity exists [is] to prevent governmental entities from being bound by the policy decisions of their predecessors," *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 706 (Tex.2003), "[w]e defer to the Legislature to waive immunity" because " 'legislative control over sovereign immunity allows the Legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public.' To ensure that this legislative control is not lightly disturbed, a waiver of immunity must be clear and unambiguous." *Tooke*, 197 S.W.3d at 332–33 (quoting *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex.2002)). We review the trial court's ruling on a plea to the jurisdiction based on governmental im-

munity from suit de novo. *IT–Davy*, 74 S.W.3d at 855.

## APPLICABILITY OF GOVERNMENTAL IMMUNITY

■ The Joint Venture first argues governmental immunity does not apply to this suit because "Bexar Met acted in a proprietary capacity when it purchased and sold the real property at issue for a profit"; and "governmental entities are not entitled to governmental immunity for their proprietary actions." However, as a conservation district created pursuant to the provisions of article XVI, section 59 of the Texas Constitution,[1] Bexar Met is a political subdivision of this State and performs only governmental functions. *Bennett v. Brown County Water Imp. Dist. No. 1*, 153 Tex. 599, 272 S.W.2d 498 (Tex. 1954); *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 121–22 (Tex.App.-Houston [14th Dist.] 1997, no pet.) ("Water districts and like entities created under section 59 of article XVI of the Texas Constitution can only perform governmental functions.").

■ The Joint Venture also argues that governmental immunity does not apply because "[s]uits seeking ... equitable relief have traditionally been excluded from the constraints of governmental immunity because they do not run the same risk of depleting the governmental entity's coffers." In support of its argument, the Joint Venture quotes the following statement in *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401 (Tex.1997): "we distinguish suits to determine a party's rights against the State from suits seeking damages." *Id.* at 404.[2] But this general statement must be read in the context of the paragraph it concludes. As the court explained in the preceding sentences, because "[a] state official's illegal or unauthorized actions are not acts of the State," "an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *Id.* "This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability." *IT–Davy*, 74 S.W.3d at 855. "In contrast, ... suits against state officials seeking to establish a contract's validity, ***to enforce performance under a contract,*** or to impose contractual liabilities are suits against the State." *Id.* at 855 (emphasis added). "That is because such suits attempt to control state action by imposing liability on the State. Consequently, such suits cannot be maintained without legislative permission." *Id.* at 856.

In short, the relevant distinction is not between suits seeking equitable relief and those seeking money damages, as the Joint Venture argues, but between suits seeking to compel state officers to act within their official capacity and suits seeking to control state action by imposing liability on the State. Here, it is indisputable that the Joint Venture seeks through its suit to require Bexar Met to perform a contract and thus "control state action." Accordingly, we hold governmental immunity applies. *See Catalina*, 121 S.W.3d at 704 (holding that county was immune from suit for specific performance of real estate contract); *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838 (Tex.1958) (hold-

---

1. *See* Act of May 10, 1945, 49th Leg., R.S., ch. 306, 1945 Tex. Gen. Laws 491, 491–505.

2. The Joint Venture also cites the same cases cited by the supreme court in the paragraph leading up to this sentence, *i.e., Dir. of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264 (Tex.1980); *Tex. Highway Comm'n v. Tex. Ass'n of Steel Imp., Inc.*, 372 S.W.2d 525 (Tex.1963); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709 (Tex.1945). Our discussion above encompasses all of these cases.

ing that suit for declaratory and injunctive relief that sought to "compel performance of or to enforce rights arising out of a contract with a state agency made on behalf of the State in its sovereign capacity" was barred by sovereign immunity).

## STATUTORY WAIVER

The Joint Venture next argues that Bexar Met's immunity from suit is waived by section 49.066(a) of the Texas Water Code because this is a suit for breach of a written contract approved by Bexar Met's board. We of course recognize that Bexar Met is subject to chapter 49.[3] But we disagree that section 49.066(a), as originally enacted in 1995 or as amended in 1999, waives Bexar Met's immunity from this suit.

As originally enacted in 1995, subsection 49.066(a) provided that "[a] district may sue and be sued in the courts of this state in the name of the district by and through its board. All courts shall take judicial notice of the creation of the district and of its boundaries." Act of May 25, 1995, 74th Leg., R.S., ch. 715, § 2, 1995 Tex. Gen. Laws 3755, 3760 (amended 1999) (current version at TEX. WATER CODE ANN. § 49.066(a) (Vernon 2000)). In 1999, subsection (a) was amended by adding the following sentence: "A suit for contract damages may be brought against a district only on a written contract of the district approved by the district's board." Act of May 30, 1999, 76th Leg., R.S., ch. 1354, § 8, 1999 Tex. Gen. Laws 4589, 4591. Although the Joint Venture recognizes that the "sue and be sued" language in section 49.066(a) does not, standing alone, constitute a waiver of immunity, see Tooke, 197 S.W.3d at 342, it nonetheless argues that this language constitutes a clear waiver of immunity when read in the context of the

law existing both when it was originally enacted and when it was amended in 1999. We disagree.

### *1995 Enactment*

■ According to the Joint Venture, we must assume the legislature intended to waive immunity from suit because it enacted section 49.066 after the Texas Supreme Court held that the phrase "may sue and be sued" in an organic statute was "quite plain and gives general consent for [a governmental entity] to be sued in the courts of Texas in the same manner as other defendants." *See Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970) (overruled by *Tooke,* 197 S.W.3d at 342). The Joint Venture contends this broad waiver of immunity was simply narrowed by the 1999 amendment to waive immunity for breach of contract suits only if the contract was in writing and approved by the district's board. This construction of the statute, the Joint Venture argues, is necessary to give meaning to the remaining provisions of section 49.066 providing for the payment of a "judgment for debt against a district," § 49.066(b); designating an agent for service of process and notice, § 49.066(c); exempting the district from the requirements of bonds for appeals and injunctions, § 49.066(f); and requiring that certain suits against the district be instituted only by the State, §§ 49.066(d)-(e)—all of which, the Joint Venture argues, "would be pure surplusage" if the water district were immune from all suits.

The Joint Venture's argument that the "sue and be sued" language in section 49.066(a) is a general waiver of immunity is foreclosed by the Texas Supreme Court's decision in *Tooke,* in which the

**3.** *See* TEX. WATER CODE ANN. § 49.001(a)(1) (Vernon Supp.2006); *Id.* § 49.002 (Vernon 2000); Op. Tex. Att'y Gen. No. GA–0355 (2005).

court reconsidered its holding in *Missouri Pacific* and held that the phrase "sue and be sued," by itself, in an organic statute, does not waive immunity from suit; "[b]ecause the phrase means different things in different statutes, it cannot be said to be clear and unambiguous." *Tooke*, 197 S.W.3d at 342 *Id.* "The words can mean that immunity is waived, but they can also mean only that a governmental entity, like others, has the capacity to sue and be sued in its own name." *Id.* at 337. Accordingly, to determine whether section 51.075 of the Texas Local Government Code's authorization for a "municipality" to "plead and be impleaded in any court" waives a home-rule municipality's immunity from suit, the court reviewed the statute's antecedents and found that the legislature had authorized municipalities to "sue and be sued" or to "plead and be impleaded" in various statutes since 1858 and codified that authority in 1987 without significant change; consequently, the court concluded that the statutes all "use common language to refer to an entity's *capacity* to be involved in litigation" and were not waivers of immunity from suit. *Id.* at 333–34. Significantly, the court did not consider the fact that the legislature codified the authority to "plead and be impleaded" *after Missouri Pacific* to be any evidence of a legislative intent to waive immunity. *See id.* at 333–34.[4] So it is here.

▇▇▇▇ When Bexar Met was created in 1945 "as a governmental agency, a body politic and corporate," it was given "the powers vested by the Constitution and general laws in such public agency" and other powers, including the general power "to sue and be sued in its corporate name." Tex. Water Aux. Laws art. 8280–126 (Vernon 2006) [Act of May 10, 1945, 49th Leg.,

R.S., ch. 306, 1945 Tex. Gen. laws 491, 492–93 (amended 1953, 1957, 1997, 2003)]. The 1945 Act does not indicate that the legislature intended the "sue and be sued" language to be a general waiver of Bexar Met's governmental immunity from suit. Rather, as with the statutes examined in *Tooke*, it appears the legislature used "common language to refer to [Bexar Met's] *capacity* to be involved in litigation." *See Tooke*, 197 S.W.3d at 333. In short, by authorizing Bexar Met to "sue and be sued in its corporate name," it seems apparent the Legislature intended that Bexar Met, "like . . . any other corporation, be an entity *capable* of suing and being sued itself, in its own name, as opposed to one that could sue or be sued only through a personal representative, like a trust or an estate. As a rule, a governmental entity without the power to sue and be sued cannot be a party in litigation. Reasonably construed, the [1945] statute[ ] meant only that [Bexar Met] was the sort of entity that it was possible to sue, leaving aside whether suit was barred by immunity." *Id.* at 334.

In 1995, the Legislature passed comprehensive legislation in an effort to achieve procedural uniformity among the different types of local water districts. *See* Act of May 25, 1995, 74th Leg., R.S., ch. 715, 1995 Tex. Gen. Laws 3755; David B. Brooks, Texas Practice: County and Special District Law § 46.3 (2002). As part of this effort, administrative provisions governing many districts created by authority of article XVI, section 59 of the Texas Constitution, which had previously been spread throughout the civil statutes and the Texas Water Code, were brought together in a new chapter 49 of the Water Code. The "sue and be sued" language used by the

---

4. The court also noted that "the Legislature did not amend the statute involved in *Missouri Pacific,* or any other statute" in response to the holding in that case and "continued to use 'sue and be sued' in organic statutes." *Tooke* at 340.

legislature when it enacted section 49.066(a) in 1995 was substantially similar to that it used in the 1945 Act and the meaning of the words did not change.

Nor do we believe that subsections (b) through (f) of section 49.066 either evidence a legislative intent to waive immunity from suit or are rendered "pure surplusage" by a holding that subsection (a) does not encompass a waiver of immunity. Nothing in subsections (b) through (f) references a water district's immunity from suit. Rather, subsections (d) and (e) affirmatively prohibit the prosecution of certain types of claims against a district except through a quo warranto proceeding; neither constitutes a "clear and unambiguous" statement that immunity is waived for other types of suits. And subsections (b), (c), and (f) apply in suits to which the district is either not immune (*e.g.*, suits for unconstitutional takings) or for which immunity has been waived (*e.g.*, suits under the Texas Tort Claims Act and the Texas Commission on Human Rights Act). We therefore hold that section 49.066 of the Texas Water Code, as originally enacted in 1995, does not waive Bexar Met's immunity from suit.

### 1999 Amendment

■ The Joint Venture next argues that the 1999 amendment to section 49.066(a) waives Bexar Met's immunity from suits for damages for breach of a written contract approved by the district's board.[5] We again disagree.

In support of its argument, the Joint Venture cites to the House Bill Analysis, which states that the section of the bill at issue "[a]mends Section 49.066(a), Water Code, to authorize the bringing of a suit

for contract damages against a district only on a written contract of the district approved by the district's board." OFFICE OF HOUSE BILL ANALYSIS, TEX. H.B. 846, 76th Leg., R.S. (July 28, 1999). However, in construing a statute to determine whether the legislature waived governmental immunity, we may find a waiver *only* if it "is effected by clear and unambiguous language." *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2006). The language the legislature actually used in amending section 49.066(a) does not "authorize" a suit against a water district; nor does it expressly waive immunity. Rather, the amendment creates a condition precedent: if a suit for contract damages is otherwise authorized, it may be maintained only if the stated condition is met. *See Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246 (Tex.2002) (holding that the pre-suit presentment and refusal requirements in former section 89.004(a) of the Texas Local Government Code did not waive immunity but established a condition precedent to suit).

It is also quite clear that if the Legislature intended to waive a water district's immunity from breach of contract suits when it amended section 49.066(a) in 1999, it knew how to do so. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005) (providing that "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract [for providing goods or services to the local governmental entity] waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract . . ."); *id.* § 271.151(3)(C) (expressly applying these sections to water conservation districts).

---

5. In light of our holding that section 49.066 does not waive immunity from suit, we do not reach the Joint Venture's argument that its suit for specific performance is a suit for

"contract damages" or its request that we remand the case so it can replead for liquidated contract damages.

Perhaps even more significant is that it would not have been necessary to include water districts in sections 271.151 and 271.152 of the Local Code Government if their immunity from suit on a written contract were waived by section 49.066 of the Water Code. The more logical conclusion is that, although section 271.152 of the Texas Local Government Code waives a water conservation district's immunity from suit for breach of a written contract for goods and services, the 1999 amendment to section 49.066(a) requires that these suits be founded upon written contracts approved by the district's board of directors. A water conservation district thus remains immune from a suit for breach of a contract for the sale of real estate. We so conclude and hold that section 49.066 of the Texas Water Code does not waive Bexar Met's immunity from the Joint Venture's suit.

### *Waiver by Conduct*

■ The Joint Venture next argues Bexar Met waived its immunity from suit and "submitted itself to the jurisdiction of the court" by praying for judgment and costs in its answer, filing a plea in abatement claiming a defect in parties, and obtaining a continuance and an order abating the case to pursue mediation. In support of its argument, the Joint Venture cites *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371 (Tex.2006), in which the court held that, "when the City filed its affirmative claims for relief as an intervenor, the trial court acquired subject-matter jurisdiction over claims made against the City which were connected to, germane to, and properly defensive to the matters on which the City based its claim for damages" but not, absent a legislative waiver, "over a claim for damages against the City in excess of damages sufficient to offset the City's recovery, if any." *Id.* at 377. Suffice it to say that neither Bexar Met's

general pleadings for judgment and costs nor its requests for relief are the types of affirmative claims for monetary relief contemplated in *Reata.* We therefore hold Bexar Met did not waive its immunity by its conduct in this litigation.

### EQUITY

■ Finally, the Joint Venture argues that we should apply principles of equitable estoppel to prevent Bexar Met from asserting its immunity because "[j]ustice, honesty, and fair dealing require Bexar Met to fulfill the promise it made to the Joint Venture." However, the cases the Joint Venture cites in support of its argument require not only that the application of equitable estoppel not "interfere[ ] with the exercise of [the entity's] governmental functions" but also that the "entity has accepted and retained the benefits arising from the contract." *See City of Hutchins v. Prasifka,* 450 S.W.2d 829, 836 (Tex.1970) (no interference with governmental functions); *City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746, 751 (1956) (accepted and retained benefits). Neither is present here. To the contrary, forcing a governmental entity to close a sale that the directors do not believe to be in their constituents' best interests directly interferes with the entity's governmental functions. And the Joint Venture does not point to any contractual benefits that Bexar Met has accepted and retained. Rather, "the facts presented ... illustrate a fundamental reason why immunity exists—to prevent governmental entities from being bound by the policy decisions of their predecessors. [ T]he [district] acted within its discretion to protect the perceived interests of the public by rejecting the contract. In doing so, the [district] did *not profit unfairly* at [the plaintiff's] expense." *Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 706 (Tex.2003).

## CONCLUSION

Because Bexar Metropolitan Water District is entitled to immunity from this suit, the trial court erred in denying Bexar Met's plea to the jurisdiction. We therefore reverse the trial court's order and render judgment dismissing the Joint Venture's suit for want of jurisdiction.