**CLEAR LAKE CITY WATER AUTHORITY, Appellant,**

v.

**FRIENDSWOOD DEVELOPMENT COMPANY, LTD., Appellee.**

No. 14–07–00096–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 22, 2008.

Barry Abrams, Ramon G. Viada III, Houston, for appellant.

**1.** *See* Tex. Const. art. XVI, § 59; Act of Apr. 18, 1963, 58th Leg., R.S., ch. 101, 1963 Tex. Gen. Laws 164, 173; Tex. Water Code Ann. chs. 49, 51 (Vernon 2000 & Supp.2007).

Lawrence J. Fossi, Karen B. Jewell, Murray B. Cohen, Houston, for appellee.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION ON REHEARING

KEM THOMPSON FROST, Justice.

Appellee Friendswood Development Company, Ltd.'s motion for rehearing is granted. The court's opinion issued on February 12, 2008, is withdrawn, and this Opinion on Rehearing is issued in its place.

This case arises from a contract dispute between a water authority and a development company. When the development company brought suit asserting breach of contract, the water authority asserted governmental immunity from suit. By interlocutory appeal, the water authority now challenges the trial court's order denying its plea to the jurisdiction. Concluding that the Texas Legislature waived the water authority's immunity from suit under section 271.152 of the Texas Local Government Code, we affirm the trial court's order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Clear Lake Water Authority (the "Authority") is a conservation and reclamation district under article 16, section 59 of the Texas Constitution, and it operates as a water control and improvement district under Texas statutes.[1] Appellee Friendswood Development Company, Ltd. ("Friendswood Development") is a developer owning land within the boundaries of the Authority.

In March 1998, the Authority and Friendswood Development executed a document entitled "Sales Agreement and Lease of Facilities" ("the Agreement").

Under the Agreement, Friendswood Development was to arrange for the construction of water distribution lines, sanitary sewer lines, and drainage facilities to provide service to houses Friendswood Development proposed to build on its land; and the Authority agreed to purchase or lease the completed "Facilities." [2]

The Agreement gave the Authority the right to purchase the Facilities with either bond proceeds or annual user fees and property taxes. Although the Authority had the right to use general revenues to purchase the Facilities, it was not obligated to do so and could rely solely on bond proceeds. The Authority's obligation to pay with bond proceeds was conditioned on voter approval of bonds at a bond election. The Authority did not promise when it would hold a bond election, or that any bond measure would be approved by the voters, but it did promise "that it shall include in any bond election it does hold subsequent to the effective date of this Agreement bond authorization in an amount sufficient to pay the purchase price of the Facilities." [3]

The Authority conducted bond elections in May 1998 and October 1998. In each of those elections, a measure was proposed that would have authorized the issuance of bonds sufficient to permit the Authority to purchase the Facilities. Both times, the measures failed.

In July 2004, the Authority's board of directors voted to conduct another bond-authorization election, scheduled for September 11, 2004. In the election, the Authority sought voter authorization of $29.1 million in bonds, but that amount did not include funds required to pay for the Facilities. In the September 2004 election, the voters approved by a ten-to-one margin authorization of the $29.1 million in bonds.

According to Friendswood, the Authority currently uses the Facilities free of charge.

Friendswood Development sued the Authority, asserting that under the Agreement the Authority was obligated to submit the same proposition to the voters in every later bond election it held, unless and until the voters approved bonds to fund the purchase of the Facilities. Friendswood Development claimed the Authority breached the contract by refusing to submit such a proposition to the voters in the September 2004 election. Friendswood Development sought more than $1 million in damages purportedly resulting from the Authority's alleged breach of contract.

The Authority filed a plea to the jurisdiction or, alternatively, motion for summary judgment, contending governmental immunity from suit bars this action. Friendswood Development responded to the plea and filed its own motion for summary judgment. On February 5, 2007, the trial court denied the Authority's plea to the jurisdiction, and the Authority filed this appeal the same day. The following day, Friendswood Development filed an emergency motion requesting the district court to vacate its February 5 denial to the plea to the jurisdiction. On February 8, 2007, the district court granted Friendswood Development's emergency motion and vacated the February 5 order. On February 12, the district court signed an order in which it sustained certain evidentiary objections by Friendswood Development and an order in which the court again denied the Authority's plea to the jurisdiction. The district court also signed an order in which it granted final summary judgment awarding Friendswood Development $1,120,235.99 in damages. The same

2. We refer to the water distribution lines, sanitary sewer lines, and drainage facilities collectively as the "Facilities."

3. Original emphasis omitted.

day, Friendswood Development moved this court to dismiss the Authority's appeal, asserting that, by vacating the February 5 order, the district court had rendered the appeal moot. This court denied Friendswood Development's motion. *See* Tex. R.App. P. 27.3.

## II. Issue Presented for Review

The Authority presents a single issue for review: Did the district court err in denying the Authority's plea to the jurisdiction? The Authority contends, as a matter of law, that governmental immunity bars Friendswood Development's lawsuit.

## III. Applicable Law and Standard of Review

### A. Immunity

 When a political subdivision of the State is immune from suit under the doctrine of governmental immunity, a court lacks subject-matter jurisdiction over the suit.[4] *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Governmental immunity has two components: immunity from liability and immunity from suit. *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006). Immunity from suit bars suit against the entity altogether. *Id.* When a governmental entity enters into a contract, that entity waives immunity from liability and voluntarily binds itself, just as any other party would, to the terms of the contract, but that entity does not thereby waive immunity from suit. *Id.* For there to be a waiver of immunity from suit in the contract-claim context, the Legislature must have waived immunity from suit as to the claim in question by clear and unam-

biguous language. *See* Tex. Gov't Code Ann. § 311.034 (Vernon Supp.2007) (providing that a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language); *Tooke,* 197 S.W.3d at 332–33 (requiring clear and unambiguous language to waive governmental immunity).

Courts have little difficulty in recognizing the Legislature's intent to waive immunity from suit when a statute contains language expressly waiving such immunity. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697 (Tex.2003). Absent such express waiver language, it has been rare for Texas courts to conclude that the Legislature waived immunity from suit. *Id.* In *Wichita Falls State Hospital,* the Texas Supreme Court noted that, in the absence of express waiver language, "we have employed several aids to help guide our analysis in determining whether the Legislature has clearly and unambiguously waived sovereign immunity." *Id.* The high court described these aids as follows:

> First, a statute that waives the State's immunity must do so beyond doubt, even though we do not insist that the statute be a model of "perfect clarity." For example, we have found waiver when the provision in question would be meaningless unless immunity were waived.

> Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity. In this respect, our methodology resembles that of the United States Supreme Court when it con-

---

4. Often, courts use the terms "sovereign immunity" and "governmental immunity" interchangeably; nevertheless, they are two distinct concepts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). "Sovereign immunity" refers to a State's immunity from suit and liability. *Id.* Its protec-

tion extends not only to the State, but also to the varying divisions of state government, including agencies, boards, hospitals, and universities. "Governmental immunity" protects political subdivisions of the State, including counties, cities, and school districts. *Id.*

siders a purported waiver of the federal government's sovereign immunity. If the text and history of the statute leave room to doubt whether the Legislature intended to waive sovereign immunity, we are less likely to find a waiver.

Third, if the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity.

Finally, we are cognizant that, when waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors. Therefore, when deciding whether the Legislature intended to waive sovereign immunity and permit monetary damages against the State, one factor to consider is whether the statute also provides an objective limitation on the State's potential liability.

*Id.* at 697–98 (citations omitted). Even in *Wichita Falls State Hospital,* the Texas Supreme Court did not state that courts are required to use these aids in determining whether the Legislature clearly and unambiguously has waived governmental immunity. *See id.* at 697–702. In addition, in *Tooke,* the Texas Supreme Court noted that the court of appeals had used these four aids in its analysis; however, the *Tooke* court did not use these aids in its determination as to whether the statute in question clearly and unambiguously waived governmental immunity. *See Tooke,* 197 S.W.3d at 330–45. We have not found any instances of the Texas Supreme Court using these aids after its decision in *Tooke.* The *Tooke* court did not approve or disapprove of these aids. It appears that courts may use them but are not required to do so.

### B. Standard of Review

In filing a plea to the jurisdiction, a litigant challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's ruling on the plea. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). Upon review, we consider the pleadings and the evidence pertinent to the jurisdictional inquiry; we do not consider the merits of the case. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

### IV. ANALYSIS

In 1963, the Texas Legislature created the Authority as a conservation and reclamation district under article 16, section 59 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 59; Act of Apr. 18, 1963, 58th Leg., R.S., ch. 101, 1963 Tex. Gen. Laws 164, 173. The Authority exercises the rights, powers, privileges, authority, and functions conferred and imposed by Texas statutes regarding water control

742

and improvement districts. *See id.* Such water control and improvement districts are political subdivisions of the State and generally are entitled to governmental immunity. *See Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 549–50 (Tex.2004) (concluding that water control and improvement district is a political subdivision of the State generally entitled to governmental immunity); *Clear Lake City Water Auth. v. Clear Lake Utils. Co.,* 549 S.W.2d 385, 391 (Tex.1977) (concluding that the Authority is a political subdivision of the State). Therefore, under the doctrine of governmental immunity, the Authority is immune from suit in this case unless the Legislature has waived the Authority's immunity from suit by clear and unambiguous language. *See Tooke,* 197 S.W.3d at 332–33; *see also* Tex. Gov't Code Ann. § 311.034. In its pleadings and in its briefing, Friendswood Development asserts that the Legislature waived the Authority's immunity from suit under section 49.066 of the Texas Water Code, or in the alternative, under section 271.152 of the Texas Local Government Code. *See* Tex. Water Code Ann. § 49.066 (Vernon 2000); Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005).

**A. Did the Legislature waive the Authority's immunity from suit under Texas Water Code section 49.066?**

■■■ Chapter 49 of the Texas Water Code applies to the Authority. *See* Tex. Water Code Ann. §§ 49.001(a)(1), 49.002 (Vernon 2000 & Vernon Supp.2006); *Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture,* 220 S.W.3d 25, 29 (Tex. App.-San Antonio 2006, pet. filed). Section 49.066, entitled "Suits," provides:

(a) A district may sue and be sued in the courts of this state in the name of the district by and through its board. A

suit for contract damages may be brought against a district only on a written contract of the district approved by the district's board. All courts shall take judicial notice of the creation of the district and of its boundaries.

(b) Any court in the state rendering judgment for debt against a district may order the board to levy, assess, and collect taxes or assessments to pay the judgment.

(c) The president or the general manager of any district shall be the agent of the district on whom process, notice, or demand required or permitted by law to be served upon the district may be served.

(d) Except as provided in Subsection (e), no suit may be instituted in any court of this state contesting:

(1) the validity of the creation and boundaries of a district created under this code;

(2) any bonds or other obligation created under this code; or

(3) the validity or the authorization of a contract with the United States by the district.

(e) The matters listed in Subsection (d) may be judicially inquired into at any time and determined in any suit brought by the State of Texas through the attorney general. The action shall be brought on good cause shown, except where otherwise provided by other provisions of this code or by the Texas Constitution. It is specifically provided, however, that no such proceeding shall affect the validity of or security for any bonds or other obligations theretofore issued by a district if such bonds or other obligations have been approved by the attorney general as provided by Section 49.184.[5]

---

5. Section 49.184 of the Water Code refers to approval of bonds by the Attorney General

and the registration of bonds. *See* Tex. Water Code Ann. § 49.184 (Vernon Supp.2007).

(f) A district or water supply corporation shall not be required to give bond for appeal, injunction, or costs in any suit to which it is a party and shall not be required to deposit more than the amount of any award in any eminent domain proceeding.

TEX. WATER CODE ANN. § 49.066. In 1997, this court concluded that the Legislature had waived the immunity from suit of all districts covered by section 49.066 based on the "sue and be sued" sentence in section 49.066(a). *See Loyd v. ECO Res., Inc.,* 956 S.W.2d 110, 122 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (relying on *Missouri Pacific R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812 (Tex. 1970)). However, this part of *Loyd* is no longer good law following the Texas Supreme Court's overruling of *Missouri Pacific* in *Tooke.*[6] *See Tooke,* 197 S.W.3d at 342-43. We have found only three post-*Tooke* cases addressing whether the Legislature waived immunity from suit in section 49.066, and in all of these cases the courts conclude there is no waiver.[7]

First, we note that neither immunity from suit nor governmental immunity is expressly waived in section 49.066; these terms are not even mentioned in this section. *See* TEX. WATER CODE ANN. § 49.066. Therefore, this court must determine if this is one of the rare instances in which the Legislature waived immunity from suit by clear and unambiguous language but without express reference to immunity. *See Wichita Falls State Hosp.,* 106 S.W.3d at 697.

The language in the first and third sentences of section 49.066(a) was contained in the statute at issue in *Missouri Pacific. See Tooke,* 197 S.W.3d at 338; *Missouri Pacific R.R. Co.,* 453 S.W.2d at 813. We are bound by the *Tooke* court's conclusion that such language alone is not sufficient to waive immunity from suit. *See Tooke,* 197 S.W.3d at 342-43.

In 1999, the Legislature amended section 49.066(a) to add what is now the second sentence of section 49.066(a). *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1354, § 8, 1999 Tex. Gen. Laws 4589, 4591. In this sentence, the Legislature states that a suit for contract damages may be brought against a district only on a written contract of the district approved by the district's board; however, it does not state that all parties to such contracts may sue the district for breach of these contracts or that immunity from suit as to all such claims is waived. The *Tooke* court held that no waiver of immunity from suit is contained in language stating that the governmental entity "may contract and be contracted with, implead and be impleaded in all courts and places *and in all matters whatsoever.* ..." *Tooke,* 197 S.W.3d at 344 (emphasis added). The *Tooke* court concluded that such language was not a clear and unambiguous waiver of immunity from suit; rather, the *Tooke* court concluded all that was clearly stated was that the governmental entity can be sued and impleaded in court when suit is permitted, not that immunity is waived for all suits. *Id.* Likewise, we conclude that

---

6. Likewise, the portion of a 2003 case from this court indicating that the Legislature has waived the Authority's immunity from suit is no longer good law after *Tooke. See Clear Lake City Water Auth. v. Kirby Lake Development, Ltd.,* 123 S.W.3d 735, 750-51 (Tex. App.-Houston [14th Dist.] 2003, pet. denied).

7. *See Valley Mun. Utility Dist. No. 2 v. Rancho Viejo, Inc.,* No. 13-07-545-CV, 2008 WL 384320, at *2-4 (Tex.App.-Corpus Christi Feb.14, 2008, no pet. h.) (mem. op.); *Boyer, Inc. v. Trinity River Auth. of Tex.,* No. 2-07-052-CV, — S.W.3d —, —, 2008 WL 163560, at *3 (Tex.App.-Fort Worth Jan. 17, 2008, no pet. h.); *Bexar Metro. Water Dist.,* 220 S.W.3d at 29-32.

all the second sentence of 49.066(a) clearly conveys is that, if another statute (for example section 271.152 [8]) waives immunity as to a contract suit against a district, then such a suit may be brought only on the type of contract described in section 49.066(a). *Id.; Bexar Metro. Water Dist.,* 220 S.W.3d at 31. If, in 1999, the Legislature intended to waive immunity from suit for all water districts as to claims for breach of written contracts approved by the district's board, then it would seem strange that six years later the Legislature would expressly waive immunity as to claims based on certain types of written contracts.[9] *See* Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005); *Bexar Metro. Water Dist.,* 220 S.W.3d at 32.

■ Similarly, in section 49.066(b), the Legislature describes relief that may be awarded by any court rendering judgment for debt against a district. *See* Tex. Water Code Ann. § 49.066(b). In this statute, the Legislature did not state that any suits against a district on a debt are permitted or that immunity is waived as to such suits. We conclude that all section 49.066(b) clearly says is that, if, in another statute, the Legislature waives immunity from suit against a district on a debt, then any court rendering judgment on that debt may award the relief stated in section 49.066(b). *See Tooke,* 197 S.W.3d at 344; *Bexar Metro. Water Dist.,* 220 S.W.3d at 31.

■ In section 49.066(c), the Legislature specifies the people who are the agents on whom may be served any process, notice, or demand required or permitted by law to be served on the Authority. *See* Tex. Water Code Ann. § 49.066(c). The Legislature does not state when the Authority's agents may be served with any process, notice, or demand, and it does not clearly and unambiguously waive immunity from suit. *See Tooke,* 197 S.W.3d at 344; *Bexar Metro. Water Dist.,* 220 S.W.3d at 31.

■ In section 49.066(d) and (e), the Legislature prohibits parties other than the Attorney General of Texas from instituting certain kinds of suits and states that the Attorney General may bring suit on behalf of the State, on good cause shown, to inquire into the matters listed in section 49.066(d). Because the present suit was not brought by the Attorney General and because it does not prompt inquiry into the matters listed in section 49.066(d), the Legislature does not waive the Authority's immunity from suit in this case in this part of section 49.066. *See Bexar Metro. Water Dist.,* 220 S.W.3d at 31.

■ In section 49.066(f), the Legislature states that the Authority cannot be required to give bond for appeal, injunction, or costs in any suit to which it is a party and that the Authority is not required to deposit more than the amount of any award in any eminent domain proceeding. *See* Tex. Water Code Ann. § 49.066(f). The instant case is not an eminent domain proceeding. In section

8. We use this example only as an illustration. We recognize that the Legislature enacted section 271.152 six years after it enacted the second sentence in section 49.066(a).

9. Friendswood Development asserts that the Legislature included water districts in the definition of a "local governmental entity" in section 271.152 to reemphasize its prior intent to waive immunity from suit that the courts allegedly have ignored. However, this argument is inconsistent with the language of section 271.152, in which the Legislature does not waive immunity from suit as to all claims against water districts (as some allege was the intent in the first sentence of section 49.066(a)) and the Legislature does not waive immunity from all suits on board-approved, written contracts (as some allege was the intent in the second sentence of section 49.066(a)).

49.066(f), the Legislature does not state when the Authority may properly be made a party to a suit, and it does not clearly and unambiguously waive immunity from suit. *See Tooke,* 197 S.W.3d at 344; *Bexar Metro. Water Dist.,* 220 S.W.3d at 31. This language may properly apply to suits in which there is no immunity from suit, for example unconstitutional takings cases or claims under the Texas Tort Claims Act, or to cases in which immunity has not been waived and the Authority is seeking a judicial determination in this regard. *See Bexar Metro. Water Dist.,* 220 S.W.3d at 31.

Though we are not required to do so, we choose to examine the four aids from *Wichita Falls State Hospital. See* 106 S.W.3d at 697–98. As to the first aid, for the reasons stated above, the Legislature has not waived the Authority's immunity from suit in this case beyond doubt, and section 49.066 would not be meaningless unless immunity from suit is waived. As to the second aid, the text and history of section 49.066 leave room to doubt whether the Legislature intended to waive the Authority's governmental immunity. As to the third aid, the Legislature does not require in section 49.066 that the State or the Authority be joined in any lawsuit. As to the fourth aid, section 49.066 does not provide any objective limitation on the State's potential liability.[10] *Compare* TEX. WATER CODE ANN. § 49.066 (failing to impose any objective limitation on the State's potential liability), *with* TEX. LOC. GOV'T CODE ANN. § 271.153 (Vernon 2005) (imposing objective limits on recovery under section 271.152 by excluding recovery for punitive damages, most consequential damages, and damages for unabsorbed home office overhead). Therefore, none of the *Wichita Falls State Hospital* aids weighs in favor of the existence of a clear and unambiguous waiver of immunity from suit in section 49.066.

In sum, after carefully reviewing section 49.066 under existing precedents, we conclude that in this statute the Legislature did not waive the Authority's immunity from suit by clear and unambiguous language.[11] *See Rancho Viejo, Inc.,* 2008 WL 384320, at *2–4; *Boyer, Inc.,* —— S.W.3d at ——, 2008 WL 163560, at *3; *Bexar Metro. Water Dist.,* 220 S.W.3d at 29–32.

**B. Did the Legislature waive the Authority's immunity from suit under Local Government Code section 271.152?**

**10.** Friendswood Development asserts that, in section 49.066, the Legislature does impose objective limitations on the State's potential liability because it requires board-approved written contracts, prevents private parties from contesting the matters stated in section 49.066(d), and relieves the Authority from having to post bonds or deposit amounts beyond the amount of the award in eminent domain proceedings. However, the fourth aid looks to objective limitations imposed on the governmental entity's liability on the claims for which immunity allegedly has been waived. Precluding certain types of suits does not fit in this category. Waiving any bond requirement does limit the governmental entity's potential litigation expenses; however, governmental entities are often exempted from such ancillary expenses, regardless of whether immunity has been waived. In addi-

tion, such a waiver does not limit the governmental entity's exposure as to the claims for which the Legislature allegedly waived immunity. Furthermore, limiting the amount the governmental entity has to deposit when it is condemning land in an eminent-domain proceeding is not a limitation on the amount of any claims against the governmental entity.

**11.** Friendswood Development asserts that this court should give significance to the fact that the Legislature used "sue and be sued" language at a time when the Texas Supreme Court had held that this language waived immunity from suit. However, the *Tooke* court gave this fact no significance; therefore, we give this fact no significance. *See Tooke,* 197 S.W.3d at 333–42; *Bexar Metro. Water Dist.,* 220 S.W.3d at 30.

■ Friendswood Development also contends that the Legislature waived the Authority's immunity from suit in section 271.152 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE § 271.152. In 2005, the Legislature enacted subchapter I of chapter 271 of the Local Government Code, comprising sections 271.151–.160.[12] *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 1, 2005 Tex. Gen. Laws 1548 (codified at TEX. LOC. GOV'T CODE §§ 271.151–.160).

### The Language of Section 271.152

Unlike Texas Water Code section 49.066, section 271.152 of the Local Government Code contains an express waiver of immunity from suit as to certain breach-of-contract claims:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE § 271.152. For an entity to waive immunity from suit as to contract claims under section 271.152, the following statutory criteria must be satisfied:

(1) The entity must be "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract."

(2) The entity must enter into "a contract subject to this subchapter."

(3) The claim must be for breach of the contract [13] and be asserted in a civil suit in "county or state court" or in an "authorized arbitration proceeding" in accordance with any "mandatory procedures established in the contract ... for the arbitration proceedings."

---

12. This section applies to claims that arise before its effective date of September 1, 2005:

> only if sovereign immunity has not been waived with respect to the claim before the effective date of this Act. A claim that arises under a contract executed before the effective date of this Act and with respect to which sovereign immunity has been waived is governed by the law in effect on the date the contract was executed, and the former law is continued in effect for that purpose.

Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen. Laws 1548, 1549.

13. The Authority also asserts that, because Friendswood Development alleges the Authority breached the Agreement only in regard to the potential sale of the Facilities, the other parts of the Agreement are not relevant to the issue of whether section 271.152 waives the Authority's immunity in this case. However, under the unambiguous language of section 271.152, if the Agreement is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity," then the Authority "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE § 271.152. Under this statutory regime, once the prerequisites for waiver of immunity are shown to be satisfied, all claims for breach of the contract in question are subject to the Legislature's waiver of immunity. *See* TEX. LOC. GOV'T CODE § 271.151, *et seq.* In addition, in *Ben Bolt,* the Texas Supreme Court concluded that the Legislature had waived immunity under this statute even though the court concluded that the part of the contract on which the plaintiff based its claim did not involve the provisions of good or services to the local governmental entity. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Property/Casualty Joint Self-Insurance Fund,* 212 S.W.3d 320, 327 (Tex.2006) (stating that, for there to be a waiver of immunity under section 271.152, the suit must be for breach of "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity").

*See* Tex. Loc. Gov't Code §§ 271.151, 271.152. In this case, the parties do not dispute that the first and third elements are satisfied. As to the second element, the Authority does not dispute that it entered into the Agreement; however, the Authority argues that the Agreement is not "a contract subject to this subchapter," which is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2). The Agreement is a written contract, and the Authority has not asserted that the Agreement was not properly executed on the Authority's behalf. Therefore, the issue at hand is whether the Agreement "stat[es] the essential terms of the agreement for providing goods or services to the [Authority]." [14] *See id.*

### The Agreement

In the underlying suit, Friendswood Development seeks damages resulting from the Authority's alleged breach of the Agreement by its failure to include in a bond election subsequent to the effective date of the Agreement a proposal for bond authorization in an amount sufficient to pay the purchase price for the Facilities, which already are installed. If the voters had approved such a bond-authorization proposal, Friendswood Development alleges, then the Authority would have an obligation under the Agreement to buy the Facilities, currently owned by Friendswood Development, with the bond proceeds. The Agreement contains the following relevant provisions:

- The Authority is authorized to provide, among other things, water supply, waste disposal, and drainage facilities to the land within its boundaries.

- Friendswood Development is developing land within the Authority and desires that water supply, waste disposal, and drainage facilities be provided to such land prior to the time at which the Authority can obtain voter approval and pay for the construction and acquisition of such facilities.

- Friendswood Development and the Authority desire to provide for the design, engineering, construction, acquisition, operation, maintenance, lease, and sale of all water distribution lines, sanitary sewers, and drainage facilities required to serve the subdivision in question (hereinafter "Subdivision"), such water distribution lines,

---

**14.** In response to Friendswood's motion for rehearing on appeal, the Authority asserts, among other things, that immunity has not been waived under section 271.152 because no amount is "due and owed" by the Authority under the Agreement within the meaning of section 271.153(a)(1). *See* Tex. Loc. Gov't Code Ann. § 271.153(a)(1). Presuming, without deciding, that Friendswood had to plead damages satisfying the requirements of section 271.153(a) to fall within the waiver of immunity in section 271.152 and liberally construing Friendswood's petition (as to which the Authority did not specially except), Friendswood pleaded that its contract damages fall within the scope of section 271.153. However, in its plea to the jurisdiction and supplement thereto the Authority did not assert that governmental immunity applied based on Friendswood's failure to satisfy section 271.153(a)(1). *See Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App.-Austin 2006, pet. denied) (holding that, in interlocutory appeal of denial of plea to jurisdiction, appellate review is limited to the grounds asserted in the plea that the trial court denied); *accord Brenham Housing Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Furthermore, the Authority did not challenge, either with argument or evidence in its plea, Friendswood's allegation that its claim satisfies section 271.153. *See Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221 (Tex. 2004). In addition, the Authority did not argue section 271.153(a)(1) in its opening brief on appeal.

sanitary sewers, and drainage facilities are collectively referred to in the Agreement as the "Facilities."

- Friendswood Development will cause the Facilities to be constructed under contracts with third-party contractors, in accordance with the rules of a state conservation commission. Friendswood Development shall provide for inspection by the Authority's engineers of work performed under the third-party contracts, and these engineers have the right to halt construction work until the contractor in question complies with the plans and specifications. These third-party contracts are subject to approval by the Authority's Board of Directors.

- Subject to Friendswood Development's compliance with the Agreement and reasonable development of the Subdivision, the Authority agrees to serve the water and wastewater requirements of the Subdivision, subject to certain limitations.

- Friendswood Development agrees to sell to the Authority all completed portions of the Facilities. The Authority also accepts assignment of any unperformed portion of the Agreement no more than 30 days after the Authority receives bond proceeds for the Authority to use as payment for the purchase price.

- Friendswood Development agrees to lease the Facilities to the Authority without charge until the Authority purchases the Facilities.

- Friendswood Development agrees, at its own expense, to award and diligently prosecute a contract or contracts for, and to otherwise cause to be constructed, all streets, roads, and bridges described in the respective plats for the Subdivision in accordance with the plans and specifications approved by the Authority's engineers.

Our task is to determine if the Agreement contains the essential terms for providing goods or services to the Authority, as contemplated by section 271.151(2). We find guidance in a relatively recent Texas Supreme Court decision, *Ben Bolt*. See *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Property/Casualty Joint Self–Insurance Fund*, 212 S.W.3d 320, 326–27 (Tex.2006).

### The Texas Supreme Court applied Section 271.151(2) in Ben Bolt.

In *Ben Bolt*, the only case from the Texas Supreme Court applying the language of section 271.151(2),[15] our high

---

**15.** Friendswood Development cites several cases involving construction contracts for real property. *See City of Mesquite v. PKG Contracting, Inc.*, 148 S.W.3d 209 (Tex.App.-Dallas 2004) (involving construction of a storm drainage system), *rev'd*, 197 S.W.3d 388, 388–89 (Tex.2006) (reversing and remanding to the trial court so that plaintiff could have opportunity to argue in the trial court that the Legislature waived city's immunity from suit in the recently enacted section 271.152); *City of Carrollton v. McMahon Contracting, L.P.*, 134 S.W.3d 925 (Tex.App.-Dallas 2004) (involving street repairs), *rev'd*, 197 S.W.3d 387 (Tex.2006) (reversing and remanding to the trial court so that plaintiff could have opportunity to argue in the trial court that the Legislature waived city's immunity from suit in the recently enacted section 271.152); *Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch. Dist.*, 123 S.W.3d 63 (Tex.App.-Dallas 2003) (involving construction of new school building), *rev'd*, 197 S.W.3d 390, 391 (Tex. 2006) (reversing and remanding to the trial court so that plaintiff could have opportunity to argue in the trial court that the Legislature waived city's immunity from suit in the recently enacted section 271.152). These cases are not on point because, in all of these cases, the courts of appeals did not address section 271.152, and the Texas Supreme Court only remanded to the trial court so that the plaintiff *could have the opportunity to make an argument* under the recently enacted section 271.152.

court took an expansive view of section 271.152 in determining that in it the Legislature provided a clear and unambiguous waiver of the local governmental entity's immunity from suit as to the contract in question.[16] *See Ben Bolt,* 212 S.W.3d at 326–27. In that case, a school district filed a declaratory-judgment action against a self-insurance fund composed of ninety-two local governmental entities. *See id.* at 322. The school district sought a declaration that a loss it had sustained was a "covered occurrence" under its insurance policy with the fund. *See id.* at 323. The fund asserted governmental immunity. *See id.*

After determining that the fund enjoyed governmental immunity in its own right, the Texas Supreme Court addressed whether, in section 271.152, the Legislature had waived the fund's immunity from suit as to the declaratory-judgment action in question. *See id.* at 327. The fund asserted that the agreement at issue in the case—the insurance policy—did not involve the provision of goods or services *to* the fund because the school district was simply paying the fund for insurance coverage. *See id.* at 324–26. Nonetheless,

the *Ben Bolt* court rejected this argument based on the fund's admission that its members, including the school district in question, elect a governing board, a subcommittee of which resolves claims disputes. *See id.* The *Ben Bolt* court concluded that, by participating in the election of the fund's governing board, the school district provided services to the fund, and the high court found that this provision of services satisfied the statutory requirement of "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." *See id.* The *Ben Bolt* court reached this conclusion without requiring that this provision of services by the members of the fund be stated in the agreement (the insurance policy).[17] Even though the essence of the agreement (insurance policy) appeared to be an insurance transaction in which the only thing provided to the fund was money, the *Ben Bolt* court concluded that the agreement fell within the scope of the statutory language because the school district was a member of the fund and the fund's members elected the fund's governing board.[18] "To [this] extent, at least, the Fund's

16. We have found no case from the Fourteenth Court of Appeals construing this statutory language. Friendswood Development cites *City of Houston v. Clear Channel Outdoor, Inc.;* however, that case is not on point. *See* 233 S.W.3d 441, 447 (Tex.App.-Houston [14th Dist.] 2007, no pet.). The only issue decided in that case was that the trial court did not err in denying the City of Houston's plea, in which the City asserted that there was no waiver of immunity because the contract was not "properly executed on behalf of the [City of Houston]" under Local Government Code section 271.151(2). *See id.* at 442–43, 445–47. The *City of Houston* court did not address the meaning or application of the language requiring that there be "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." *See* Tex. Loc. Gov't Code § 271.151(2); *City of Houston,* 233 S.W.3d at 445–47.

17. The *Ben Bolt* court stated that the fund acknowledged that its members elected its governing board, without addressing whether any references to these election services were contained in the insurance policy. Indeed, the dissenting justices stated that the record in *Ben Bolt* did not contain the insurance policy. *See id.* at 327, 328–29 (Willett, J., dissenting).

18. The Bill Analysis for Section 271.152 states that the bill in question clarifies and re-expresses the Legislature's intent "that all local governmental entities that are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts, *subject to the limitations set forth in [the bill]."* House Comm. on Civil Practices, Bill Analysis, Tex. H.B.2039, 79th Leg. R.S. (2005) (emphasis added). Although the *Ben Bolt* court quoted this sentence from the Bill Analysis without including the final clause (emphasized above), the court clearly stated that this statutory waiver of immunity only

members provide services to the Fund." *Id.* at 327.

The *Ben Bolt* court acknowledged that, under section 271.152, the Legislature has not waived immunity as to all contracts entered into by local government entities; rather, it has waived immunity only as to written contracts "stating the essential terms of the agreement for providing goods or services to the local governmental entity that [are] properly executed on behalf of the local governmental entity."[19] TEX. LOC. GOV'T CODE § 271.151(2); *Ben Bolt,* 212 S.W.3d at 326–27. Nonetheless, the *Ben Bolt* court broadly construed the meaning of this statutory language. *See Ben Bolt,* 212 S.W.3d at 326–27. We apply the reasoning of *Ben Bolt* to this appeal.

### The sale of the Facilities is not a provision of goods.

 With *Ben Bolt* as our guide, we turn to consider the Agreement. The Agreement contemplates several actions by Friendswood. One action on which Friendswood relies is the potential sale of the Facilities to the Authority. The Facilities have been installed and affixed to the land so that they are not goods; therefore, the potential sale to the Authority of fixtures that have become part of the real property does not involve the provision of goods. *See* TEX. BUS. & COM.CODE ANN. § 2.105(a) (Vernon 1994) (defining sale-of-goods contracts as involving the sale of "all things … moveable … at the time of identification to the contract"); *City of San Antonio v. Hartman,* 201 S.W.3d 667,

672 n. 19 (Tex.2006) (holding that terms not defined in a statute are given their ordinary meaning); *San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 640 (Tex. 2000) (defining real property as "land, and generally whatever is erected or growing upon or affixed to land"); *Logan v. Mullis,* 686 S.W.2d 605, 607 (Tex.1985) (concluding that a tank car converted to a drainage culvert and affixed to land is real property, not personalty); *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392, 394 (Tex.1982) (concluding that sale of real property and improvements thereon is not a sale of goods), *overruled in part on other grounds by Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355 (Tex.1987); *Bexar Metro. Water Dist.,* 220 S.W.3d at 32; BLACK'S LAW DICTIONARY 714 (8th ed.2004) (defining "goods" as "tangible or movable personal property other than money; esp., articles of trade or items of merchandise [as in] [']goods and services[']"). As a result, the potential sale of the Facilities to the Authority does not involve the provision of goods.

### Under the Ben Bolt decision, Friendswood Development provided services to the Authority

The Agreement, however, has another dimension beyond the sale of the Facilities—it contemplates hiring third parties to construct the Facilities and to build the streets, roads, and bridges for the Subdivision. This action appears to be directed towards and to benefit the Subdivision and its residents, rather than the Authority.[20]

---

applied to written contracts "stating the essential terms of the agreement for providing goods or services to the local governmental entity." *See Ben Bolt,* 212 S.W.3d at 327. Therefore, the quotation of the Bill Analysis does not appear to provide an additional reason as to why the *Ben Bolt* court concluded the contract fell within the scope of the statute.

19. *See also* TEX. LOC. GOV'T CODE §§ 271.151(2), 271.152; *Tooke,* 197 S.W.3d at 342, 346 (stating that section 271.152 is a limited waiver of immunity from suit for breach of contract under certain circumstances and that it is a more measured approach that waives immunity as to certain contract claims).

20. Relying on the *Bexar Metropolitan* case from the Fourth Court of Appeals, the Authority asserts that section 271.152 does not waive

Likewise, based on the language of the Agreement, these services appear to be provided to the Subdivision and its residents rather than to the Authority. Moreover, Friendswood Development did not perform the construction services with its employees; instead, it retained the services of independent contractors to perform this work.[21]

Nonetheless, the parties plainly state in the Agreement that the Authority is authorized to provide, among other things, water supply, waste disposal, and drainage facilities to the land within its boundaries. If the school district's participation in the election of the fund's governing board was sufficient to constitute the provision of services in the insurance contract in *Ben Bolt*, then we conclude that Friendswood Development's agreement to hire third parties to construct the Facilities and to build the streets, roads, and bridges is likewise sufficient to constitute the provision of ser-

vices to the Authority. Applying the *Ben Bolt* court's liberal construction of the applicable statute, we conclude that the Agreement is a written contract stating the essential terms of the agreement for providing services to the Authority for the construction of the Facilities as well as for the construction of streets, roads, and bridges in the Subdivision.[22] *See* TEX. LOC. GOV'T CODE §§ 271.151, 271.152; *Ben Bolt*, 212 S.W.3d at 326–27. Therefore, the Authority's immunity from suit for all claims for breach of the Agreement has been waived under section 271.152.

## V. CONCLUSION

In section 49.066 of the Texas Water Code, the Legislature did not waive the Authority's immunity from suit by clear and unambiguous language. However, applying the Texas Supreme Court's decision in *Ben Bolt*, we conclude that the Agreement falls within the scope of the type of

---

immunity for real-estate sales contracts and that the Agreement is a real-estate sales contract. *See Bexar Metro. Water Dist.*, 220 S.W.3d at 32 (stating the waiver of immunity from suit in section 271.152 does not waive a water district's immunity for breaching a real-estate sales contract). If the Agreement dealt only with the potential sale of the Facilities by Friendswood Development to the Authority, we would agree with this argument. However, we also must take into account the other parts of the Agreement. Likewise, the *Rancho Viejo* court based its holding on the utility district's failure to properly execute the contact, which was an easement agreement that was materially different from the Agreement at issue in this case. *See Rancho Viejo, Inc.*, 2008 WL 384320, at *4.

**21.** The Authority also asserts that the Agreement cannot be a construction contract because the parties do not describe the construction project with specificity and the Agreement was not publicly bid, as required by the Texas Water Code. *See* TEX. WATER CODE ANN. §§ 49.271–49.273 (Vernon 2000). Presuming, without deciding, that these statutes apply and prevent the Agreement from being a construction contract, that would not pre-

vent the Agreement from being "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *See* TEX. LOC. GOV'T CODE §§ 271.151, 271.152.

**22.** The Authority argues that, under the Agreement, Friendswood Development is not obligated to construct anything for the Authority; rather, the construction referred to in the Agreement is to be performed by third-party contractors. Although the Agreement requires Friendswood Development to hire third-party contractors, the relevant statute does not require that the provision of goods or services to the local governmental unit be performed by employees rather than independent contractors. *See* TEX. LOC. GOV'T CODE §§ 271.151, 271.152. Such a narrow construction of the statute would be inconsistent with its plain meaning and the Texas Supreme Court's broad construction of the statute. *See* TEX. LOC. GOV'T CODE §§ 271.151, 271.152; *Ben Bolt*, 212 S.W.3d at 326–27.

contracts as to which the Legislature waived immunity in section 271.152 of the Texas Local Government Code.[23] *See* TEX. LOC. GOV'T CODE §§ 271.151, 271.152; *Ben Bolt*, 212 S.W.3d at 326–27. Accordingly, we overrule the Authority's issue and affirm the trial court's order denying the Authority's plea to the jurisdiction.

**23.** The trial court struck the affidavit of William Schweinle, the Authority's general counsel. On appeal, the Authority asserts the trial court abused its discretion in doing so. However, presuming without deciding that the trial court erred in striking this affidavit, this error would not affect our conclusion that the trial court properly denied the Authority's plea to the jurisdiction. Schweinle's affidavit is replete with parol evidence and conclusory statements. Even if Friendswood Development had not objected to the affidavit and even if the trial court had not stricken the affidavit, these statements would be incompe-

tent and amount to no evidence. *See Coastal Transport Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex.2004); *City of Mission v. Popplewell*, 156 Tex. 269, 294 S.W.2d 712, 717 (1956). Even considering all of the testimony in this affidavit, we still would reach the same conclusion based on section 271.152 and the *Ben Bolt* decision. Because consideration of this affidavit would not materially affect our analysis and disposition in this case, we need not and do not address the issue of whether the trial court erred in striking the Schweinle affidavit.