**Affirmed in Part, Reversed and Remanded in Part, and Majority and Concurring Opinions filed December 15, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-01040-CV

---

## HARRIS COUNTY FLOOD CONTROL DISTRICT, Appellant

### V.

## GREAT AMERICAN INSURANCE COMPANY, Appellee

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-19859**

---

## MAJORITY OPINION

A county flood control district brings this interlocutory appeal from the trial court's denial of its plea to the jurisdiction in a suit brought by a performance-bond surety. We conclude that the Texas Legislature has waived the district's immunity from suit as to (1) the surety's claim for breach of a purchase order and (2) the surety's claims for equitable subrogation and waste based upon breach of the performance-bond principal's contract. Because governmental immunity bars the equitable-subrogation and waste claims that are not based upon breach of this contract, the trial court erred in

denying the district's plea to the jurisdiction as to these claims. Accordingly, we affirm in part and reverse and remand in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Allegations in Great American's Live Pleading

Appellee/plaintiff Great American Insurance Company brought suit against appellant/defendant Harris County Flood Control District ("District"). The District filed a plea to the jurisdiction challenging the trial court's jurisdiction over Great American's quantum-meruit claim and its request for attorney's fees. The trial court denied this plea. In a prior interlocutory appeal, this court concluded that the Legislature had not waived the District's governmental immunity from suit as to these matters. *See Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.*, 309 S.W.3d 614, 617–18 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Accordingly, this court reversed and rendered judgment dismissing Great American's quantum-meruit claim and attorney's fees request for lack of jurisdiction. *See id.* This court did not rule on any of Great American's other claims. *See id.*

On remand, Great American filed an amended petition. In the remainder of this section, we set forth the allegations and claims asserted by Great American in this amended pleading.

The District is a conservation and reclamation district that the Texas Legislature created by statute in 1937, acting under article XVI, section 59 of the Texas Constitution. The Texas Legislature has waived the District's immunity from suit under section 271.152 of the Texas Local Government Code. Handex Construction Services entered into a contract with the District ("Handex Contract") to construct certain channel conveyance and basin improvements in Harris County ("Project"). Handex began work on the Project in July 2002. As a result of change orders, the contract price for the Handex Contract was eventually increased to $5,277,298.14.

2

Great American, as surety for the Project under Chapter 2253 of the Texas Government Code, issued a performance bond ("Performance Bond"), which provided that if Handex abandoned the Project or otherwise failed to comply with the conditions of the Handex Contract, then Great American had the right to assume control of and complete the Handex Contract.

All work completed and materials furnished under the Handex Contract were to be measured by the Project engineer ("Engineer"), whose decisions were final. At the beginning of each month, the Engineer was required to estimate the amount of work performed during the preceding month as well as the value of the work at the unit prices set forth in the Handex Contract. From this amount, five percent would be withheld as retainage and ninety-five percent would be paid to the contractor as interim monthly payments. Handex submitted a series of pay applications to the District each month. The Engineer approved all of these applications, and the District paid Handex $4,397,640.31 in interim payments.

Handex encountered financial difficulties and Handex's subcontractors and suppliers made numerous claims on the payment bond issued by Great American. Great American asked the District not to make any further contract payments to Handex without the written consent of Great American and to issue the balance of the contract funds jointly to Handex and Great American. Great American made this request under its subrogation rights as surety under the payment and performance bonds. Despite this request, the District continued to issue payments directly to Handex, engaging in conduct that allegedly was "deliberate waste of the contract proceeds." Handex filed for bankruptcy in November 2005, but for a number of months thereafter Handex continued to work on the Project and to receive additional payments from the District, contrary to Great American's request. In March 2006, Handex rejected the Handex Contract in the bankruptcy proceeding.

The following month, the District issued a purchase order to Great American that conveyed the Handex Contract to Great American ("Purchase Order"). The Purchase Order is a written contract between the District and Great American. As Great American began work on the Project, it became apparent that the remaining unpaid balance on the Handex Contract was insufficient to complete the Project. Due to apparent negligence on the part of the Engineer, Handex's pay applications had been approved and paid even though the quantities being excavated were grossly overstated. When Great American took over the Project, large quantities remained to be excavated, yet there was an insufficient amount remaining in the Handex Contract balance to pay for the work needed to complete the Project.

The District paid all of Handex's payment applications without proper measurement of the amount excavated, resulting in the overpayment of Handex. In doing so, the District allegedly breached the Handex Contract. In the alternative, more soil and dirt was required to be excavated than originally had been estimated by the District, requiring extra work by Great American. Accordingly, Great American is entitled to compensation for extra work in completing the work under the Purchase Order and the Handex Contract.

In May 2007, the District issued a certificate of substantial completion, evidencing that Great American had completed its obligations under the Purchase Order and Performance Bond. Representatives of the District inspected Great American's work and declared it to be substantially complete in accordance with the Handex Contract. The certificate was a release of Great American's obligation to complete any remaining work. The District did not issue any payment or change order providing compensation to Great American for the work it performed in achieving substantial completion of the Project. The District made only one interim payment to Great American after it took over the Project pursuant to the Purchase Order. The District has not paid any of the other pay applications by Great American.

4

In January 2008, in accordance with the Handex Contract and the Purchase Order, Great American submitted to the District an application for final payment for $721,478.89, the amount that allegedly was due and owing based upon the amount of work performed and the value of that work at the unit prices established by the Handex Contract. Although Great American performed or substantially performed the Handex Contract pursuant to the Purchase Order, the District has refused to pay the amount due and owing to Great American under the Purchase Order, the Handex Contract, and the Performance Bond.

## B.    The Surety's Claims

Based upon the foregoing allegations in its live pleading in the trial court, Great American asserts the following claims against the District: (1) a breach-of-contract claim based upon the District's alleged breach of the Handex Contract, (2) a breach-of-contract claim based upon the District's alleged breach of the Purchase Order,[1] (3) a statutory claim to the proceeds of a public work contract under section 2253.071 of the Texas Government Code, (4) a waste claim based upon the District's alleged breach of duties under the Handex Contract, (5) a waste claim based upon the District's allegedly negligent or wrongful conduct, (6) an equitable-subrogation claim in which Great American seeks to step into the shoes of Handex and assert a claim against the District for breach of the Handex Contract, and (7) an equitable-subrogation claim in which Great American seeks recovery beyond what the District owes under the Handex Contract.[2] The District filed a second plea to the jurisdiction, and the trial court denied this plea. The District now appeals.

---

[1] Great American also seeks to recover interest on its contract damages based upon the Prompt Payment Act. *See* Tex. Gov't Code Ann. § 2251.001, et seq. (West 2008).

[2] In its live petition, Great American also asserts a quantum-meruit claim and requests reasonable and necessary attorney's fees. Though Great American has not withdrawn these items from its petition, they were dismissed for lack of jurisdiction under this court's mandate in the first appeal and are not at issue in this appeal. *See Harris Cnty. Flood Control Dist.*, 309 S.W.3d at 618.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

### A.     Governmental Immunity

When a political subdivision of the State is immune from suit under the doctrine of governmental immunity, a court lacks subject-matter jurisdiction over the suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Governmental immunity has two components: immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit bars suit against the entity altogether. *Id.* When a governmental entity enters into a contract, that entity waives immunity from liability and voluntarily binds itself, just as any other party would, to the terms of the contract, but that entity does not thereby waive immunity from suit. *Id.* For there to be a waiver of immunity from suit, the Legislature must have waived immunity from suit as to the claim in question by clear and unambiguous language. *See* Tex. Gov't Code Ann. § 311.034 (West Supp. 2010); *Tooke*, 197 S.W.3d at 332–33.

### B.     Standard of Review

In filing a plea to the jurisdiction, a litigant challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's ruling on the plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a party has filed a plea to the jurisdiction challenging the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See id.* If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.* If the pleadings

affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

If in its plea to the jurisdiction a party challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227–28. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226–28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the legislature chose. *See id.*

### III. ANALYSIS

In 1937, the Texas Legislature enacted a statute (the "1937 Act") creating the District as a conservation and reclamation district under article XVI, section 59 of the Texas Constitution. *See* Tex. Const. art. XVI, § 59; Act of May 10, 1937, 45th Leg., R.S., ch. 360, 1937 Tex. Gen. Laws 714; *Harris Cnty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1100 (Tex. 1940). The District is a political subdivision of the State of

7

Texas and generally is entitled to governmental immunity. *See* Act of May 15, 1937, 1937 Tex. Gen. Laws at 714; *Mann*, 140 S.W.2d at 1100; *Harris Cnty. Flood Control Dist.*, 309 S.W.3d at 617. Therefore, under the doctrine of governmental immunity, the District is immune from suit in this case unless the Legislature has waived the District's immunity from suit by clear and unambiguous language. *See* Tex. Gov't Code Ann. § 311.034; *Tooke*, 197 S.W.3d at 332–33.

## A. Waiver of Immunity as to Breach-of-the-Purchase-Order Claim

In its pleadings and in its briefing, Great American asserts that the Legislature waived the District's immunity from suit as to Great American's claim for breach of the Purchase Order under section 271.152 of the Texas Local Government Code.[3] *See* Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005). Section 271.152 of the Local Government Code contains an express waiver of immunity from suit as to certain breach-of-contract claims:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code § 271.152. For there to be a waiver of immunity from suit under section 271.152, the following statutory criteria must be satisfied:

(1) The entity must be "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract."

(2) The entity must enter into "a contract subject to this subchapter."

(3) The claim must be for breach of the contract and be asserted in a civil suit in "county or state court" or in an "authorized arbitration proceeding" in accordance with any "mandatory procedures established in the contract . . . for the arbitration proceedings."

---

[3] Unless otherwise specified, all statutory references in this opinion are to the Texas Local Government Code.

*See* Tex. Loc. Gov't Code §§ 271.151, 271.152; *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 256 S.W.3d 735, 746 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd). In this case, the District does not argue that the first and third elements are lacking, and we conclude that these elements are satisfied. As to the second element, a "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." Tex. Loc. Gov't Code § 271.151(2). Great American has alleged, and the District does not dispute, that the Purchase Order is a written contract entered into by the District and that the Purchase Order states the essential terms of the agreement for providing goods or services to the District. The only element that the District challenges on appeal is whether the Purchase Order was properly executed on behalf of the District. The District asserts that the Purchase Order was not properly executed because it is void given the District's failure to comply with the competitive bidding requirements allegedly required by the County Purchasing Act and by Subchapter B of Chapter 271 of the Local Government Code. *See* Tex. Local Gov't Code Ann. § 262.021, *et seq*. (West 2005); *id.* § 271.021, *et seq*. (West 2005). The evidence reflects that there was no competitive bidding before the District issued the Purchase Order. We presume, without deciding, that if competitive bidding were required, then the Purchase Order was not properly executed, and there is no waiver of governmental immunity under section 271.152.

**1.  *Did section 262.023 apply to the District's issuance of the Purchase Order?***

Under the 2006 version of the County Purchasing Act, one of three procedures was required before "a county" could make certain purchases under a contract requiring the expenditure of more than $25,000. *See* Tex. Local Gov't Code Ann. § 262.023 (West 2005). The statute does not define the word "county," so we construe this term based on its ordinary meaning. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n. 19 (Tex. 2006). The District is a conservation and reclamation district that is separate and

9

distinct from Harris County. *See* Act of May 15, 1937, 1937 Tex. Gen. Laws at 714; *Mann*, 140 S.W.2d at 1101. The parties have not cited and research has not revealed any case construing the meaning of "county" in section 262.023. We conclude that, under its plain and ordinary meaning, this term includes a Texas county, such as Harris County, but does not include an independent conservation and reclamation district, such as the District. *See, e.g.,* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3) (West 2011) (defining "governmental unit" to include various entities including "any city, county, school district, . . . conservation and reclamation district"); Tex. Local Gov't Code Ann. § 271.151(3) (West 2005) (defining "local governmental entity" to various entities, including conservation and reclamation districts, but excluding counties).

The District asserts that legislative intent that section 262.023 apply to the District is reflected in section 262.025(d), in which the Legislature provides as follows:

> In a county with a population of 2.2 million or more, the county and any district or authority created under Article XVI, Section 59, of the Texas Constitution of which the governing body is the commissioners court may require that a minimum of 25 percent of the work be performed by the bidder and, notwithstanding any other law to the contrary, may establish financial criteria for the surety companies that provide payment and performance bonds.

Tex. Local Gov't Code Ann. § 262.025(d) (West 2005). But in this statute, the Legislature confirms that the District is not included within the term "county"; otherwise, there would be no need to refer to a "district" in addition to the "county." *See id.* In section 262.025(d), the Legislature provides that the District has the ability to require that bidders perform at least twenty-five percent of the work and to establish financial criteria for surety companies that provide payment and performance bonds. *See id.* In this statute, the Legislature does not state that the requirements of section 262.023 apply to the districts referenced in section 262.025(d). *See id.* Under the plain meaning of the County Purchasing Act, we conclude that the District was not required to comply with the requirements of section 262.023 before issuing the Purchase Order.

10

### 2. *Did section 271.024 apply to the District's issuance of the Purchase Order?*

The District also relies upon section 271.024, under which the Legislature imposes additional competitive procedures upon a "governmental entity" that is required to award certain contracts on the basis of competitive bids. *See* Tex. Local Gov't Code Ann. § 271.024 (West 2005). But this statute, entitled "Competitive Bidding Procedure Applicable to Contract," applies only to a "governmental entity." *See id*. Under the plain meaning of the Legislature's definition of this term, the District is not a governmental entity. *See* Tex. Local Gov't Code Ann. § 271.021(2) (West 2005) (defining "governmental entity" to mean: "(A) a county; (B) a common or independent school district; (C) a hospital district or authority; (D) a housing authority; or (E) an agency or instrumentality of the governmental entities described by Paragraphs (A) through (D)").

The District asserts that the Legislature's intent that section 271.024 apply to the District is reflected in section 271.025(e), whose text is identical to that of section 262.025(d), discussed above. *See* Tex. Local Gov't Code Ann. §§ 262.025(d), 271.025(e) (West 2005). But in section 271.025(e), the Legislature confirms that the District is not included within the term "county"; otherwise, there would be no need to refer to a "district" in addition to the "county." *See id*. In this section, the Legislature provides that the District has the ability to require that bidders perform at least twenty-five percent of the work and to establish financial criteria for surety companies that provide payment and performance bonds. *See id*. The Legislature does not state that the districts referenced in section 271.025(e) are "governmental entities" or that the requirements of section 271.024 apply to these districts. *See id*. Under the plain meaning of Subchapter B of Chapter 271 of the Local Government Code, we conclude that the District was not required to comply with the requirements of section 271.024 before issuing the Purchase Order. *See id*. §§ 271.021(2), 271.024.

**3.** *Do sections 262.023 and 271.024 apply to the District's issuance of the Purchase Order under the 1937 Act?*

The District argues that, even if sections 262.023 and 271.024 do not apply to the issuance of the Purchase Order under their own terms, these statutes apply under the following language of the 1937 Act:

> State Laws Applicable. All existing State Laws, General or Special, applicable to contracts and to the receipt and disbursement of, and accounting for, public funds in Harris County are hereby made applicable to the contracts and to the receipt and disbursement of, and accounting for, any funds collected and disbursed under the terms of this Act.

Act of May 15, 1937, §8, 1937 Tex. Gen. Laws at 719. The parties have not cited and research has not revealed any case construing this part of the 1937 Act. The District argues that in this section of the 1937 Act, "in Harris County" modifies both "contracts" and "the receipt and disbursement of, and accounting for, public funds." According to the District, the Legislature provides in this section that state laws applicable to contracts in Harris County apply to the District.

The term "contracts" is in a separate prepositional phrase, and we conclude that "in Harris County" does not modify "contracts." Therefore, the Legislature simply stated that all state laws applicable to contracts apply to the District's contracts. The Legislature stated that the District's contracts would not be given special treatment and would be covered by any Texas statute governing contracts in general. Under the unambiguous language of the 1937 Act, the Legislature did not state that Texas statutes regarding contracts would apply to the District's contracts contrary to the plain meaning of these statutes. *See id.* We conclude that, under the plain meaning of the 1937 Act, this statute does not make sections 262.023 and 271.024 apply to the District's contracts.[4]

---

[4] Even if "in Harris County" modified "contracts," the statute would state that Texas laws applicable to contracts *in* Harris County apply to the District's contracts; it would not state that Texas laws applicable to contracts *made by* Harris County apply to the District's contracts. Making Texas statutes regarding

12

In conclusion, the District's arguments under its first issue lack merit. As a matter of law, under section 271.152, the Legislature has waived the District's immunity from suit as to Great American's claim for breach of the Purchase Order. Accordingly, we overrule the District's first issue.

**B.    Waiver of Immunity Regarding the Claims for Equitable Subrogation and Waste**

Under its second and third issues, the District argues that governmental immunity bars Great American's claims for equitable subrogation and for waste. Great American asserts a claim for equitable subrogation in which Great American seeks to step into the shoes of Handex and assert a claim against the District for breach of the Handex Contract. Great American also asserts a claim for equitable subrogation in which Great American seeks recovery beyond what the District owes under the Handex Contract. Under the latter claim, Great American seeks to recover from the District an amount equal to the contract price of the Handex Contract ($5,277,298.14) minus the payments that the District should have made to Handex under this contract, rather than the amounts that the District actually paid Handex.

The only statute that Great American asserts as a waiver of governmental immunity regarding these two claims is section 271.152. In the former equitable-subrogation claim, Great American seeks to step into the shoes of Handex and assert a claim against the District for breach of the Handex Contract. Under the applicable standard of review, we conclude that, as a matter of law, this claim falls within the waiver of governmental immunity contained in section 271.152. *See* Tex. Local Gov't Code Ann. §§ 271.151 – 152.

However, under principles of equitable subrogation, a surety may be subrogated to the principal's tort and statutory claims. *See, e.g.*, *Gulf Liquids New River Project, LLC*

---

contracts in Harris County apply to the District's contracts would not mean that these statutes would apply to the District's contracts contrary to their plain meaning.

*v. Gulsby Eng'g, Inc.,* —S.W.3d—,—, No. 01-08-00311-CV, 2011 WL 662672, at *24 (Tex. App.—Houston [1st Dist.] Feb. 17, 2011, no pet. h.) (stating that, "under principles of equitable subrogation, a surety may be able to assert its principal's contract, tort, or statutory claims against the obligee arising out of the bonded contract"). In addition, under principles of equitable subrogation, courts have held that a performance-bond surety who completes a project for its defaulting principal may recover from the obligee amounts beyond what the principal was entitled to recover under its contract with the obligee. *See, e.g.*, *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 319–20 (5th Cir. 1967) (holding that Miller Act performance-bond surety, which completed performance of its principal's contract with the United States, was subrogated to the rights of the United States to retained funds and therefore the United States could not assert a set-off against the surety for the principal's unpaid taxes that would have applied to the principal or a party subrogated only to the principal's rights). The latter equitable-subrogation claim goes beyond a claim against the District for breach of the Handex Contract. Great American has not cited and research has not revealed any case to support a waiver of the District's governmental immunity as to this equitable-subrogation claim. We conclude that governmental immunity bars this equitable-subrogation claim. *See City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 359–60 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that waiver of immunity in section 271.152 did not apply to equitable claim for quantum meruit).

Regarding the waste claims, Great American asserts a waste claim based upon the District's alleged breach of duties under the Handex Contract and a waste claim based upon the District's allegedly negligent or wrongful conduct.[5] The only statute that Great

---

[5] In its live pleading, Great American asserts claims for waste. In reviewing the trial court's denial of the District's plea to the jurisdiction, we do not consider the merits of Great American's claims. *See County of Cameron*, 80 S.W.3d at 555; *Prairie View A&M University v. Dickens*, 243 S.W.3d 732, 736 & n.5 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Therefore, we presume, without deciding, that Great American may assert its contractual waste claim and its tortious waste claim against the District, even absent any alleged harm to real property.

14

American asserts as a waiver of governmental immunity regarding these two claims is section 271.152. Depending upon the circumstances and the manner in which it is pleaded, a claim for waste may sound in contract or in tort. *See R.C. Bowen Estate v. Continental Trailways, Inc.*, 256 S.W.2d 71, 72–73 (Tex. 1953); *Sullivan v. Booker*, 877 S.W.2d 370, 372 (Tex. App.—Houston [1st Dist.] 1994, writ denied). As pleaded, the former waste claim sounds in contract, and the latter waste claim sounds in tort. Because the former claim is based upon the District's alleged breach of the Handex Contract, this claim falls within the waiver of governmental immunity contained in section 271.152. *See* Tex. Local Gov't Code Ann. §§ 271.151 – 152. Because the latter claim sounds in tort, section 271.152 does not waive immunity from suit. *See* Tex. Local Gov't Code Ann. §§ 271.152, 157; *Clear Lake City Water Auth.*, 256 S.W.3d at 746. Great American has not asserted any other basis for concluding that the Legislature has waived the District's immunity from suit. We conclude that governmental immunity bars the latter claim but does not bar the former claim.

Great American appears to argue that its equitable-subrogation and waste claims arise from its status as surety under the Performance Bond. But, in these claims, Great American is not asserting a claim for breach of the Performance Bond; therefore, this claim does not fall within the waiver of immunity in section 271.152. Great American argues that, because the District is asserting its overpayment of Handex as a defense to Great American's contract claims, Great American can assert a claim against the District based upon its overpayment of Handex. Great American certainly is free to dispute the merits of any defenses or offsets that the District asserts as to Great American's claims for breach of the Handex Contract or for breach of the Purchase Order. But the District's assertion of any such defenses or offsets does not waive immunity from suit as to any equitable-subrogation or waste claim. *See Sharyland Water Supply Corp. v. City of Alton*, No. 09-223, —S.W.3d—,—, 2011 WL 5042023, at *5 (Tex. Oct. 21, 2011) (declining to adopt doctrine of waiver of governmental immunity by conduct). Great American also cites a case in which the Second Court of Appeals held that a city was

15

liable to a surety because the City improperly paid contract proceeds to the Internal Revenue Service ("IRS") and because there was no finding that the city made the payment based upon a good faith belief that the contract proceeds were subject to the IRS's lien against the property of the principal on the payment and performance bonds. *See Victore Ins. Co. v. City of Bowie*, 23 S.W.3d 499, 504 (Tex. App.—Fort Worth 2000, pet. denied). But the court in that case did not analyze whether the Legislature had waived the city's immunity from suit as to this claim. *See id*. at 504–05. Therefore, this case is not on point regarding the issue of the District's governmental immunity. *See id*.

For the reasons stated above, we conclude that governmental immunity bars the equitable-subrogation claim in which Great American seeks recovery beyond what the District owes under the Handex Contract as well as the waste claim that sounds in tort. But governmental immunity does not bar the equitable subrogation claim in which Great American asserts a claim against the District for breach of the Handex Contract or the waste claim that sounds in contract. In reaching these conclusions, we do not address whether these claims have merit. *See County of Cameron*, 80 S.W.3d at 555; *Prairie View A&M University*, 243 S.W.3d at 736 & n.5. In the equitable-subrogation and waste claims for which immunity has been waived, Great American is limited to recovering the damages described in the applicable version of section 271.153.[6] *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, §1, 2005 Tex. Gen. Laws 1548, 1549–49 (amended 2009) (current version at Tex. Local Gov't Code Ann. § 271.153 (West Supp. 2010). But this limitation goes to the merits of Great American's claims and does not relate to the determination of whether the Legislature has waived the District's governmental immunity. *See Sharyland Water Supply Corp.*, 2011 WL 5042023, at *2–3; *Kirby Lake Development, Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839–40 (Tex. 2010).

---

[6] The 2009 amendment to section 271.153 does not apply in this case. *See Harris Cnty. Flood Control Dist.*, 309 S.W.3d at 617–18. All references to section 271.153 in this opinion are to the version of that statute that was in effect immediately prior to the 2009 amendment.

16

**C.  The District's Second Plea to the Jurisdiction may be granted in part and denied in part.**

Under its fourth issue, the District challenges a statement by the trial court indicating that if it had subject-matter jurisdiction over at least one of Great American's claims then the trial court could properly deny the second plea in its entirety. The trial court's jurisdiction over one or more of Great American's claims does not, by itself, give the trial court jurisdiction over Great American's remaining claims. *See Thomas v. Long*, 207 S.W.3d 334, 338–39 (Tex. 2006). Therefore, the District is correct that the trial court's refusal to dismiss (1) the claim for breach of the Purchase Order, (2) the equitable-subrogation claims, and (3) the waste claims cannot be affirmed based upon the trial court's jurisdiction over other claims by Great American. But we have concluded that the Legislature has waived the District's governmental immunity as to the claim for breach of the Purchase Order and as to the equitable-subrogation and waste claims that are based upon breach of the Handex Contract. To the extent we affirm the trial court's denial of the District's second plea to the jurisdiction, we do so for these reasons, not based upon the trial court's erroneous statement of law. The District's argument under the fourth issue does not show any reversible error. Accordingly, we overrule the District's fourth issue.

## IV. CONCLUSION

Under the applicable standard of review, we conclude as a matter of law that in section 271.152, the Legislature has waived the District's immunity from suit as to Great American's claim for breach of the Purchase Order and Great American's equitable-subrogation and waste claims that are based upon breach of the Handex Contract. Governmental immunity bars the equitable-subrogation and waste claims that go beyond a claim for breach of the Handex Contract. Accordingly, we reverse the trial court's order denying the District's second plea to the extent that the trial court refused to dismiss these two claims, and we remand to the trial court with instructions to dismiss

17

these two claims for lack of subject-matter jurisdiction.  We affirm the remainder of the trial court's order.


/s/     Kem Thompson Frost
Justice


Panel consists of Justices Frost, Jamison, and McCally.  (Jamison, J., concurring).

18