

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SAN ANTONIO WATER SYSTEM, AN AGENCY OF THE CITY OF SAN ANTONIO, | § | No. 08-23-00123-CV |
| | § | Appeal from the |
| Appellant, | § | 225th Judicial District Court |
| v. | § | of Bexar County, Texas |
| THE GUARANTEE COMPANY OF NORTH AMERICA USA, | § | (TC# 2023CI04528) |
| Appellee. | | |

## MEMORANDUM OPINION[1]

In this interlocutory appeal,[2] San Antonio Water System (SAWS) asserts the trial court erred by denying its plea to the jurisdiction because it is a governmental entity entitled to immunity and its immunity has not been waived. We agree; therefore, we reverse and render.

## FACTUAL & PROCEDURAL BACKGROUND

SAWS, as project owner, and Thyssen-Laughlin, Inc. (Thyssen), as contractor, entered into two independent contracts to construct two different projects—the "Mel Waiters Project" and the

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing for interlocutory appeals from the grant or denial of a plea to the jurisdiction filed by a governmental unit).

"Westpointe Project."[3] The Guarantee Company of North America USA (GCNA) was the surety on Thyssen's behalf for both projects. When a dispute between SAWS and Thyssen arose over the Mel Waiters Project, SAWS sued (1) Thyssen for breach of performance under its contract and (2) GCNA for breach of its obligations under the performance bond.

GCNA filed an answer that included counterclaims against SAWS arising from the Westpointe Project in which it alleged three claims.[4] First, GCNA alleged SAWS breached the Westpointe Project contract by failing to pay the balance due of $119,990.33 for the labor, materials, goods, and services Thyssen delivered to the project for the benefit of SAWS.[5] Second, GCNA alleged SAWS improperly released contract funds to Thyssen in the amount of $346,037.45 without GCNA's consent, nine days after GCNA directed SAWS to not make any such payments without its consent. Third, GCNA alleged a Texas Prompt Payment Act claim and a claim for attorney's fees.

SAWS filed a plea to the jurisdiction and motion to dismiss GCNA's counterclaims. After a hearing on SAWS's motion and plea, the trial court denied both and this interlocutory appeal ensued.

## GOVERNMENTAL IMMUNITY

"SAWS is a governmental entity owned by the City of San Antonio that provides water and wastewater services in Bexar and neighboring counties." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015). As a governmental entity, it is generally immune from suit

---

[3] Meritage Homes of Texas, LLC (Meritage Homes) was the developer on the Westpointe Project and a signatory to that contract. It is not a party to the underlying dispute.

[4] After SAWS filed its plea, GCNA filed an amended counterclaim raising the same claims.

[5] GCNB contended SAWS held a remaining contract balance of $119,990.33 and GCNA had a superior right to those funds through a contractual assignment right under the surety agreement between itself and Thyssen.

unless that immunity has been waived under the Texas Tort Claims Act (the TTCA).[6] *Id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 101.025 (establishing waiver of governmental immunity). Absent the State's consent to suit, governmental immunity deprives a trial court of subject-matter jurisdiction to hear a suit against the governmental entity. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

Because the existence of governmental immunity defeats a trial court's subject-matter jurisdiction, governmental immunity is properly asserted in a plea to the jurisdiction. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When, as here, a jurisdictional plea challenges the pleadings, we determine if the pleader alleged facts affirmatively demonstrating subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of GCNA and look to GCNA's intent. *Id.*

"Where the pleadings generate a fact question regarding the jurisdictional issue, a court cannot sustain the plea to the jurisdiction." *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) (citation omitted). "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and [GCNA] should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226-27. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted

---

[6] "Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). "Sovereign immunity refers to the State's immunity from suit and liability." *Id.* "In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities." *Id.* "Governmental immunity, on the other hand, protects" entities such as SAWS. *See id.*

without allowing [GCNA] an opportunity to amend." *Id.* at 227. Thus, to defeat SAWS's plea to the jurisdiction, GCNA had the burden to plead facts that, if true, "affirmatively demonstrate" that governmental immunity either does not apply or has been waived. *See id.* at 226. Whether a court has subject-matter jurisdiction is a question of law we review de novo. *Id.*

## ANALYSIS

GCNA asserted three counterclaims against SAWS: (1) a "failure to pay" claim for $119,990.33; (2) a claim for the "improper release of contract funds" to Thyssen in the amount of $346,037.45; and (3) a "prompt payment" claim and a claim for attorney's fees. GCNA does not dispute SAWS's status as a governmental entity entitled to immunity. However, GCNA asserts immunity has been waived by SAWS's contracting with Thyssen. On appeal, SAWS states that because the Legislature has waived immunity for a breach of contract claim GCNA's "failure to pay" claim is not subject to interlocutory appeal and remains pending before the trial court. Therefore, we narrow our analysis to whether SAWS's governmental immunity is waived on the allegedly improper release of $346,037.45 and/or on GCNA's prompt payment claim and claim for attorney's fees.

### A. "Improper Release of Contract Funds" Counterclaim

The premise of this counterclaim is that SAWS did not retain funds after receiving notice from GCNA informing SAWS that it should withhold the funds from Thyssen. In its counterclaim, GCNA alleged the following regarding SAWS's "improper release of contract funds" to Thyssen in the amount of $346,037.45:

13. On December 11, 2019, GCNA issued written notice to SAWS of claims GCNA had received against the Payment Bond and directed SAWS "that no payments be made to any entity, no matter the payment form, without the consent of [GCNA]." . . . Ignoring the directive of GCNA, SAWS proceeded to remit payment to Thyssen in the amount of $346,037.45. The accounting records produced by SAWS verify that it approved the payment on December 12, 2019 and delivered the payment to Thyssen on December 20, 2019, nine

4

(9) days after GCNA directed SAWS to make no payments without the consent of GCNA.

14. GCNA issued the directive to SAWS not to release bonded contract funds (collateral of GCNA) to ensure that those bonded contract funds would only be used for completion of the Project and/or payment to subcontractors/suppliers of Thyssen that delivered labor and materials to the Project. Once Thyssen received the $346,037.45 from SAWS, GCNA learned that Thyssen used the funds for purposes other than the Project depriving GCNA of the ability to use those same funds for resolving bond claims specific to the Project. By releasing contract funds to Thyssen over the hold funds letter issued by GCNA, SAWS impaired the collateral of GCNA (i.e. contract funds) and precluded the use of the funds for their intended purpose – payment to subcontractors and suppliers delivering labor/materials to the Project. For that reason, GCNA did not have the use of the bonded contract funds to pay subcontractors/suppliers that Thyssen had not paid directly resulting in loss to GCNA under the Payment Bond. *GCNA now looks to SAWS to reimburse GCNA for the $346,037.45 improperly paid by SAWS to Thyssen by application of the contractual assignment under the GAI and the equitable doctrine of subrogation.*[7] [Emphasis added]

GCNA does not take issue with the fact that the only possible waiver of SAWS's immunity would occur pursuant to Local Government Code section 271.152, which provides that "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152. "For there to be a waiver of immunity from suit under section 271.152, the following statutory criteria must be satisfied:"

(1) The entity must be "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract."

(2) The entity must enter into "a contract subject to this subchapter."

(3) The claim must be for breach of the contract and be asserted in a civil suit in "county or state court" or in an "authorized arbitration proceeding" in accordance with any "mandatory procedures established in the contract . . . for the arbitration proceedings."

---

[7] As a condition for bonding, GCNA required Thyssen and others to execute a General Agreement of Indemnity (the GAI). SAWS was not a party to the GAI.

5

*Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.*, 359 S.W.3d 736, 742–43 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A).

The first element is satisfied; however, as to the second and third elements, the only contract executed "on behalf of" SAWS was the agreement between Thyssen, Meritage Homes, and SAWS for the Westpointe Project. GCNA was not a signatory to that contract, nor was SAWS a signatory to any contract with GCNA. Therefore, GCNA relied on equitable subrogation to argue immunity is waived because it stepped into Thyssen's shoes to recover from SAWS. GCNA contended, "[a] claim by [a] general contractor's surety for equitable subrogation, in which [the] surety seeks to step into [the] shoes of [a] contractor and recover from a governmental entity for breach of contract, falls within waiver of governmental immunity from suit."

"There are two types of subrogation." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). "Contractual (or conventional) subrogation is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss, while equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Id.* "[U]nder principles of equitable subrogation, a surety may be subrogated to the principal's tort and statutory claims." *Harris Cnty. Flood Control Dist.*, 359 S.W.3d at 746. "In addition, under principles of equitable subrogation, courts have held that a performance-bond surety who completes a project for its defaulting principal may recover from the obligee amounts beyond what the principal was entitled to recover under its contract with the obligee." *Id.*

Whether contractual subrogation or equitable subrogation, "the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured." *Mid-Continent Ins.*, 236 S.W.3d at 774. Thus,

6

although GCNA asserts a right to equitable subrogation, it may step into Thyssen's shoes to assert only those rights held by Thyssen against SAWS, subject to any defenses held by SAWS against Thyssen. GCNA primarily relies on two cases for its argument that "in addition to unpaid contract funds, a public entity-obligee may be found liable for a surety's losses on a payment bond where the public entity makes improper payments after notice of a principal's default." *See Travelers Cas. & Sur. Co. of Am. v. Harlingen Consol. Indep. Sch. Dist.*, No. 7:16-CV-411, 2018 WL 7204025, at *5 (S.D. Tex. Nov. 2, 2018); *National Sur. Corp. v. Friendswood Indep. Sch. Dist.*, 433 S.W. 2d 690, 694 (Tex. 1968). GCNA's reliance on these opinions is misplaced because, in both cases, the construction contract expressly required the owner to retain funds and prohibited the release of those funds without the surety's consent. *Harlingen Consol. I.S.D.*, 2018 WL 7204025, at *4 (contract predicated any release of retainages on the condition of the surety's consent); *Friendswood I.S.D.*, 433 S.W.2d at 691 ("The construction contract provided for the retention by the District of ten per cent of the contract price until completion.").

In this case, pursuant to the Westpointe Project contract, SAWS and Meritage Homes "agree[d] to pay the Contractor [Thyssen] in current funds, and to make payments on account, for the performance of the work in accordance with this Agreement, at the prices set forth in the Contractor's Proposal, subject to additions and deductions, all as provided in the documents incorporated herein by reference." On appeal, GCNA does not contend SAWS breached its obligation to pay Thyssen in accordance with the contract. Therefore, because SAWS paid Thyssen the $346,037.45 and does not owe Thyssen any further payments, we conclude GCNA cannot stand in Thyssen's shoes because Thyssen holds no rights as against SAWS. *See Mid-Continent Ins.*, 236 S.W.3d at 774 (holding, "the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party"). Also, the Westpointe Project contract did not require SAWS to retain funds, nor did it require a surety's consent before the release of any

funds. Therefore, SAWS did not breach a "contract subject to" the TTCA by not retaining funds or obtaining GCNA's consent to release any funds. *See Harris Cnty. Flood Control Dist.*, 359 S.W.3d at 747 (concluding, "governmental immunity bars the equitable-subrogation claim in which Great American seeks recovery beyond what the District owes under the Handex Contract as well as the waste claim that sounds in tort"). Accordingly, GCNA's counterclaim for "improper release of contract funds" does not fall within the scope of section 271.152's waiver of governmental immunity.

## B.    "Prompt Payment" Counterclaim

"If an owner . . . receives a written payment request from a contractor for an amount that is allowed to the contractor under the contract for properly performed work or suitably stored or specially fabricated materials, the owner shall pay the amount to the contractor, less any amount withheld as authorized by statute, not later than the 35th day after the date the owner receives the request." TEX. PROP. CODE ANN. § 28.002(a); *see also id.* § 28.004(a) ("An unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due."); *id.* § 28.005(b) ("In an action brought under this chapter, the court may award costs and reasonable attorney's fees as the court determines equitable and just."); *id.* § 28.009 ("Right to Suspend Work").

The Property Code defines "owner" as "a person or entity, *other than a governmental entity*, with an interest in real property that is improved, for whom an improvement is made, and who ordered the improvement to be made." *Id.* § 28.001(4) (emphasis added). SAWS is a governmental entity; therefore, GCNA's "prompt payment" counterclaim does not fall within the scope of section 28.002. *See Fed Invs., LLC. v. Nomlaki Techs., LLC*, No. SA-13-CA-1134, 2014 WL 12540866, at *4 (W.D. Tex. Oct. 23, 2014) ("A governmental entity is not an owner under the Prompt Pay Act. Therefore, the funds received by Nomlaki from IBWC do not fall within the

purview of the Prompt Pay Act and Nomlaki is entitled to summary judgment as to this claim.");

*Taylor Pipeline Constr., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 717 (E.D. Tex. 2006) (construction project involved improvements pursuant to contract between City of Houston, as owner, and P.D.G., as general contractor; "[a]ccordingly, by virtue of its status as a governmental entity, the City of Houston is precluded from being an owner under the Prompt Pay Act. Thus, because § 28.002(b) requires the contractor to receive payment from an owner and the City of Houston is not an owner under the statute, any funds P.D.G. and/or Hypower received from the City and the parties' treatment of those funds do not fall within the purview of this Act.").

### C. Attorney's fees counterclaim

GCNA also sought recovery of its attorney's fees pursuant to Texas Local Government Code section 271.153, which provides, in relevant part, that "the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to," among other things, "reasonable and necessary attorney's fees that are equitable and just." TEX. LOC. GOV'T CODE ANN. § 271.153(a)(3). Because we have concluded GCNA's "improper release of contract funds" does not fall within the scope of section 271.152's waiver of governmental immunity, SAWS's immunity also has not been waived for any claim for attorney's fees associated with this counterclaim.

### CONCLUSION

For the reasons stated above, we reverse the trial court's order denying SAWS's plea to the jurisdiction and render judgment granting SAWS's plea to the jurisdiction and dismissing with prejudice all of GCNA's counterclaims against SAWS, with the exception of the breach-of-contract counterclaim based on SAWS's alleged failure to pay the balance due of $119,990.33 for the labor, materials, goods, and services Thyssen delivered to the project for SAWS's benefit. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) (holding that after governmental entity

files plea to jurisdiction and plaintiff fails, after reasonable opportunity, to cure defective pleadings, case should be dismissed with prejudice "because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined").

SANDEE BRYAN MARION, Chief Justice (Ret.)

January 3, 2024

Before Palafox, J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)